UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**MARKEL AMERICAN INSURANCE COMPANY,**

    **Plaintiff,**

    v.            Case No. 05-C-372

**MIKE CEFALU,**

    **Defendant.**

---

## DECISION AND ORDER

On April 1, 2005, Markel American Insurance Company ("Markel") filed a complaint seeking declaratory judgment that its insured, Mike Cefalu ("Cefalu"), breached either the policy's warranty of seaworthiness at inception or the policy's continuing warranty of seaworthiness, and thus Markel is not obligated to pay for damage to the Lynn-A, a commercial fishing vessel owned by Cefalu. This case was reassigned to this court upon the parties' consent to the full jurisdiction of a magistrate judge.

Following a period for discovery, on October 26, 2006 this court conducted a one-day court trial to resolve the factual and legal issues in this case. A summary of the evidence adduced at the trial is set forth below.

### TRIAL SUMMARY

The Lynn-A is thirty-eight foot wooden-hull Pacemaker commercial fishing vessel manufactured in 1965. This boat was previously owned by Cefalu's father who acquired the vessel in 1971. Cefalu acquired the boat in 2003 or early 2004 after his father retired. Prior to this, he had been the first mate on the boat. On June 18, 2004, Markel issued an insurance policy to Cefalu for

the Lynn-A. The Lynn-A was used as a charter fishing boat and Cefalu possessed a Coast Guard license qualifying him to transport passengers.

Shortly prior to acquiring insurance from Markel, Cefalu hired Timothy Graul ("Graul"), a naval architect and surveyor, to perform a survey of the Lynn-A. This survey was conducted while the Lynn-A was in the water. Graul testified regarding the details of his inspection, and his report was received as Exhibit 1000.

Graul's inspection of the hull of boat included tapping the wood planks with a plastic hammer. By the sound generated, Graul was able to determine if there were any weak areas. Although Graul testified that wooden boats are getting rarer because of the amount of maintenance they require, Graul is familiar with wooden boats from prior inspections and having been involved in the design of the well-known Denis Sullivan schooner.

Included in Graul's report were various recommendations regarding work that he felt needed to be done on the Lynn-A such as re-caulking certain seams. The report notes that there was a shallow indentation in the hull, but the significance, if any, of this indentation was unclear. Graul did not observe rot in the areas of the hull that he was able to visually inspect. If he had discovered dry rot when he conducted his inspection, Graul was unsure what impact this would have had upon his conclusion. He stated that he would have investigated the matter further. The report states that the hull was well-maintained and structurally sound and concludes that the Lynn-A was an acceptable risk for insurance. Graul stated that he understands the term "seaworthy" to mean the vessel was suitable for taking persons to sea, and it is his opinion that the Lynn-A was seaworthy at the time of the survey.

At about 4:30 A.M on September 5, 2004, Cefalu along with his two nephews, Nicholas Cefalu and Anthony Cefalu, and his step-son, Alex Gantner ("Gantner"), set out for a day of fishing aboard the Lynn-A. The fog was exceptionally thick that morning; there was zero visibility. Thus,

Cefalu, who was at the wheel of the Lynn-A, was traveling only about three miles per hour through the narrow Sturgeon Bay Ship Canal. Cefalu was navigating largely by way of radar and his depth finder to ensure that he remained in the center of the channel and away from the numerous other boats that were also in the channel, given that this was the Sunday of the Labor Day weekend. Fog is common in the early morning hours in the Sturgeon Bay Ship Canal. Cefalu is experienced in navigating the channel; that summer alone, he had navigated the same route he took that morning about forty times without incident.

Also assisting Cefalu in navigating that morning was Gantner, who was positioned at the bow of the boat and was acting as a lookout. Gantner was able to see a willow tree, depicted in exhibit 1007, through the fog and recognized that they were heading directly for it. He called out to Cefalu to go left and the boat took a hard left. Cefalu noticed on his depth finder that the water quickly got shallow and thus they were no longer in the center of the channel. Gantner then saw that they were approaching pilings and yelled for Cefalu to put to boat in reverse. Cefalu did so and the bow dipped, and Ganter felt a "thud" under him.

The Lynn-A then regained course and continued through the channel. Shortly thereafter, Anthony Cefalu went below deck and quickly returned, reporting that the boat was taking on water. Cefalu navigated to the canal wall where he was able to tie up the Lynn-A. Cefalu contacted the Coast Guard by way of radio.

The Coast Guard arrived and was able to pump out enough water so that the Lynn-A could be towed to a marina. Here, the Lynn-A was removed from the water and placed in dry storage. Ganter testified that he saw a scrape along the side of the Lynn-A and an impression where it looked as if the wood had been pushed in. Also, Gantner observed that the algae on the hull had been scraped off before the point of the impression.

3

Timothy Dawidiuk ("Dawidiuk") owns a tackle shop and charter fishing business in Sturgeon Bay and is a friend of Cefalu. On September 5, 2004, Dawidiuk went to inspect the Lynn-A after it was pulled out of the water. He observed that a part of the hull was scraped and a portion was depressed or caved in as if something had pushed against it. Dawidiuk did not observe any boards missing.

Fritz Peterson ("Peterson"), a professional fishing guide in Sturgeon Bay and friend of Cefalu, also inspected the Lynn-A the morning it was pulled out of the water. He described that the boards along the hull were flexed in about three or four inches and he could see where something had slid along the side and pushed the boards in. Peterson testified that the planks of the hull are about an inch thick and that there was dry rot on a portion of the inside of the planks. However, at the area where the boards were pushed in, the wood was good.

Randall Maccoux ("Maccoux") repairs boats and provided Cefalu with an estimate of the cost to repair the Lynn-A. As part of providing this estimate, Maccoux inspected the Lynn-A and observed that a portion of the hull had been pushed in. The planks of the hull were still attached but had been pushed in. Maccoux also observed that there was scratching or marring along the hull where it looked like something had rubbed against the boat.

Chris Kelly ("Kelly"), of Chris Kelly & Associates, is a certified marine investigator and accredited marine surveyor, and testified as an expert. He was hired by Markel to conduct a survey of the Lynn-A as part of its investigation into Cefalu's claim. On September 14, 2004, Kelly inspected the Lynn-A. The Lynn-A was out of the water and on blocks in a storage facility. Kelly observed a hole about eleven inches by fifteen inches in the hull of the Lynn-A but no signs of a collision with a foreign object. Kelly's inspection revealed the hull of the vessel was soft and there were many signs of decay. As part of his inspection, Kelly utilized a small pick and pushed it into the hull of the Lynn-A. Kelly was able to insert this pick through the wood and, to Kelly, this

4

indicated that the wood was rotten. Kelly concluded that the breach of the Lynn-A's hull was a result of rot and decay and not from the vessel impacting a submerged object. Because decay of this sort takes time to develop, it was Kelly's opinion that the Lynn-A was not seaworthy at the inception of the insurance. Kelly's report, which includes numerous photographs, was received as Exhibit 9. Kelly concluded that the vessel could not be safely placed in the water.

Cefalu, Gantner, Dawidiuk, Peterson, and Maccoux all testified that when the Lynn-A was initially removed from the water, it was not in the condition depicted in photographs included in Kelly's report. The photographs in Kelly's report depict a hole whereas all other witnesses testified that they observed simply an indentation where the planks were still attached.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the evidence adduced at trial, it is the conclusion of this court that the Lynn-A was seaworthy at the inception of the insurance policy issued on June 18, 2004, and also at the time of the incident on September 5, 2004.

A vessel is seaworthy if it is "reasonably fit" for its intended use. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550 (1960). "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service. Id. (citing Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336 (1955)).

The only testimony to support the position that the Lynn-A was not seaworthy was that of Kelly, the surveyor hired by Markel to investigate Cefalu's claim. Kelly testified there were signs of rot in the hull and ribs of the Lynn-A, loose fasteners, and excessive caulk. He further testified that he did not observe any signs of the boat's collision with a foreign object, and therefore concluded that the hole in the vessel was the result of the planking simply giving way. This conclusion as to the reason the planking gave way appears central to Kelly's conclusion that the

Lynn-A was not seaworthy at the policy's inception or at the time of the incident. However, the evidence adduced at trial leads this court to conclude that the hole in the hull of the Lynn-A was caused by its collision with a foreign object and not the result of an ongoing failure of the hull due to decay.

Cefalu, Gantner, Dawidiuk, Peterson, and Maccoux all testified that they observed the hull of the Lynn-A soon after it was removed from the water and they noticed scrapes along the hull of the Lynn-A that would be consistent with the vessel striking a foreign object. As it is depicted in the photographs included in Kelly's report, the Lynn-A's hull is essentially clean. There is no algae that ordinarily could be found on the boat's hull. Thus, the evidence indicates that at some point prior to Kelly's inspection, the hull of the Lynn-A was cleaned and the planks that had been pushed in were removed. This is a significant alteration of the Lynn-A and it undoubtedly affected Kelly's conclusions.

Additionally, the only factual testimony regarding the events of the early morning hours of September 5, 2004 supports the conclusion that a collision occurred. While navigating the narrow Sturgeon Bay Ship Canal in fog so thick that visibility was essentially zero, the Lynn-A got off course and ventured towards the numerous submerged pilings that line the canal. In an effort to correct course and avoid a collision, the Cefalu reversed the engines, causing the Lynn-A's bow to dip in the water. As the Lynn-A dipped, Gantner heard a thud. Shortly thereafter, it was discovered that the Lynn-A was taking on water.

It is undisputed that the Lynn-A was an old boat with some significant issues regarding the condition of its hull. However, the fact that a boat may be in need of some significant maintenance does not necessarily render it un-seaworthy.

Cefalu has met his burden in demonstrating that the Lynn-A was seaworthy at the inception of the insurance policy on June 18, 2004, and on September 5, 2004. First, there is the fact that

6

Case 2:05-cv-00372-AEG   Filed 01/05/07   Page 6 of 7   Document 37

Graul inspected the Lynn-A prior to the issuance of the policy. Graul is well-qualified to conduct such condition surveys and is experienced with wooden-hulled boats. Second, the seaworthiness of the Lynn-A is demonstrated by its performance during the summer of the 2004. From the date of the policy's issuance to September 5, 2004, the Lynn-A successfully accomplished its intended purpose of transporting passengers for charter fishing trips in the waters of Lake Michigan through a variety of conditions and weather.

Therefore, it is the conclusion of the court that the Lynn-A was seaworthy at the time the policy was issued and seaworthy at the time of the September 5, 2004 incident.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, declaratory judgment shall be entered in favor of the defendant, Mike Cefalu. Specifically, the Lynn-A was seaworthy at the inception of the policy and at the time of the incident on September 5, 2004. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5th day of January, 2007.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge